1

Magistrate Judge David W. Christel

2

3

4

5

6

7    UNITED STATES DISTRICT COURT FOR THE
     WESTERN DISTRICT OF WASHINGTON
8                    AT SEATTLE

9

10   UNITED STATES OF AMERICA,          CASE NO. MJ23-74

11              Plaintiff              COMPLAINT for VIOLATION

12                                     Title 18, United States Code, Section 2314

13        v.

14   DAVID SUBIL,

15              Defendant.

16

17        BEFORE, David W. Christel, United States Magistrate Judge, U.S. Courthouse,

18   Tacoma, Washington.

19        The undersigned complainant being duly sworn states:

20                        **COUNT I**

21             **(Interstate Transportation of Stolen Property)**

22        Beginning on a date unknown, but no later than on or about January 18, 2023, and

23   continuing until February 18, 2023, in Snohomish County, in the Western District of

24   Washington, and elsewhere, DAVID SUBIL, did unlawfully transport, transmit and

25   transfer, and did aid and abet the unlawful transportation, transmission, and transfer, in

26   interstate and foreign commerce, from the State of Washington to the State of Florida,

27   stolen goods, wares and merchandise, that is Russian King Crab, of a value of $432,000

28   or more, knowing the same to be stolen, converted, and taken by fraud.

Complaint- 1
*United States v. David Subil*

All in violation of Title 18, United States Code, Sections 2 and 2314.

## COUNT II

### (Interstate Transportation of Stolen Property)

Beginning on a date unknown, but no later than on or about January 20, 2023, and continuing until February 18, 2023, in Snohomish County, in the Western District of Washington, and elsewhere, DAVID SUBIL, did unlawfully transport, transmit and transfer, and did aid and abet the unlawful transportation, transmission, and transfer, in interstate and foreign commerce, from the State of Washington to the State of Florida, stolen goods, wares and merchandise, that is Russian King Crab and Opilio Crab, of a value of $296,388 or more, knowing the same to be stolen, converted, and taken by fraud.

All in violation of Title 18, United States Code, Sections 2 and 2314.

And the complainant states that this Complaint is based on the following information:

I, David J. Spitzer, being first duly sworn on oath, depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with United States Homeland Security Investigations (HSI) and have been so employed since January 2020. In February 2021, I graduated from the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Centers (FLETC) in Glynco, Georgia. While at FLETC, I received nearly 1000 hours of training in such areas including, but not limited to criminal law, human smuggling/trafficking investigations, and criminal procedures. Prior to being employed with HSI, I was employed as an agent with the United States Border Patrol (USBP) for eleven years and was assigned to the Sector Intelligence Units in El Centro, CA, and Blaine, WA. In this capacity, I was responsible for conducting criminal investigations regarding the violation of immigration laws of the United States. In 2009, I graduated from the United States Border Patrol Academy at the FLETC in Artesia, New Mexico. My education includes a Bachelor of Arts degree in Political Science and a Bachelor of Arts degree in Criminology from the University of Florida.

Complaint- 2
*United States v. David Subil*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2.      I am assigned to HSI's Border Security Enforcement Team (BEST) and Air and Marine group in Blaine, WA (hereinafter "HSI Blaine"), which focuses on the enforcement of immigration and narcotics laws, including human trafficking and smuggling, as well as the investigation of transnational gangs. I am authorized to investigate and enforce violations of federal criminal statutes, including those in Titles 8, 18, and 21 of the United States Code.

3.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

4.      Because this Complaint is submitted for the limited purpose of establishing probable cause in support of an arrest warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that David **SUBIL** has committed the offense of Transportation of Stolen Property, in violation of Title 18, United States Code, Section 2314.

## RELEVENT LAW AND ADDITIONAL KNOWLEDGE OF AFFIANT

5.      I know from training and experience that 18 U.S.C. Section 2314 makes it illegal to an individual to have: 1) unlawfully transported or caused to be transported in interstate or foreign commerce; (2) goods, wares, merchandise, securities, or money having a value of $5,000 or more which are stolen, converted or taken by fraud; and (3) knowing the same to be stolen, converted or taken by fraud.

## PROBABLE CAUSE

### A.      Initial Information

Complaint- 3
*United States v. David Subil*

6.      On January 24, 2023, Homeland Security Investigations (HSI) Blaine received information from the Stanwood Police Department regarding a fraud case being committed in Stanwood, Washington. It was reported that an individual representing himself to be an agent of Safeway, and stolen hundreds of thousands of dollars' worth of Russian King Crab and Opilio Crab.

7.      North Star Cold Storage processes, ships, and stores frozen products for other businesses throughout the United States. The Vice President of North Star Cold Storage, Linda Boggs, informed Snohomish County Sheriff's Deputy Klassen that one of her customers, Alexander Gorelik who owns Arctic Seafoods based in San Francisco, California, was the victim of fraud.

8.      Gorelik authorized the release of two shipments of Russian king crab from the North Star Cold Storage facility on January 18, 2023, and January 20, 2023, to someone claiming to represent Safeway.

9.      Based on the review of all relevant evidence I believe Christopher Delgado, Jennifer Zavala, and Bridget Wood to be alias' of David **SUBIL**.

10.     Deputy Klassen contacted Gorelik and learned he had been contacted by multiple individuals purporting to represent Safeway. These individuals contacted Gorelik by email from the following addresses: chrisdelgado@safewaycorporate.com and jenniferzavala@safewaycorporate.com.  We believe these email accounts are owned and operated by David **SUBIL**. Gorelik had received documents to open an account with what he thought was Albertson's (Safeway's parent company) and received a vendor number. On January 3, 2023, Gorelik received an email from jenniferzavala@safewaycorporate.com with the subject line, "Vendor #".  The e-mail from the "Invoice and Billing Supervisor" went on to read, "989425 Please reference this on all orders."

11.     Gorelik later received a purchase order via email for $432,000.00 worth of Russian king crab. Gorelik received a second purchase order via email for king crab from the same "Safeway" buyer for $296,388.00. Both purchase orders were sent from

Complaint- 4
*United States v. David Subil*

Christopher Delgado (aka **SUBIL**) at the email, notifications@safeway2.odoo.com.  In looking at their website, Odoo provides business management software tools, including billing and accounting. At the bottom of the purchase order emails, generated through Odoo, is the email, chrisdelgado@safewaycorporate.com, the website, www.safewaycorporate.com, and the telephone number, 800-674-3635. After receiving the purchase orders and believing they were legitimately from Safeway, Gorelik authorized the release of the product from North Star Cold Storage in Stanwood for both purchases.

12.     After the second order, Gorelik realized he had over charged the buyer and attempted to contact the buyer by phone but was unable to reach him. Gorelik informed me that he attempted to call every phone number provided to him by Delgado and his associates, including a phone number Gorelik described as Delgado's (aka **SUBIL**) cellular phone number, (208) 509-9598. Gorelik stated he also tried the various toll-free numbers provided in the email signatures of chrisdelgado@safewaycorporate.com (888-712-1983 Ext 730), bridgetwood@safewaycorporate.com (800-674-3635 Ext 732), and jenniferzavala@safewaycorporate.com (800-674-3635 Ext 710) to no avail.  As a result, Gorelik called the Director of Seafood from Albertson's, Anthony Snow, and discovered the people he had been communicating with did not work at Safeway or Albertson's. Gorelik was informed by Anthony Snow the purchase orders were fake, and that Arctic Seafood was not set up as a vendor for Safeway or Albertson's.

**B.     Safewaycorporate.com and Associated Contact Information**

13.     The domain safewaycorporate.com, used by DELGADO, **SUBIL** and others known and unknown, is not an actual Safeway e-mail or web server. Based on an open-source search, the domain "safewaycoporate.com" was registered to "Tucows Domains, Inc." on December 27, 2022[1], the day before the first communication with Arctic Seafoods

---

[1] Based on a search of Whois.com.  According to their website, a Whois domain lookup allows you to trace the ownership and tenure of a domain name. Similar to how all houses are registered with a governing authority, all domain name registries maintain a record of information about every domain name purchased through them, along with who owns it, and the date till which it has been purchased.

Complaint- 5
*United States v. David Subil*

and its owner, Alex Gorelik. Even though the domain was registered with Tucows Domains, based on another open-source search, the hosting provider is Google LLC, but the hosting server is SiteGround.[2]  On February 14, 2023, Google responded a preservation letter that they did not have responsive information related to the domain and email addresses related to this fraud.  SiteGround has not yet responded to the preservation order. "Safewaycorporate.com" is set to automatically redirect to the actual Albertson's homepage.

14.     The real safeway.com domain, associated with one of the largest food and drug retailers in the United States, has been registered since 1995 and is administered by "Network Solutions LLC," and is Albertsons.com.

15.     The 800-674-3635 and 888-712-1983 phone numbers listed in the e-mails from Delgado (aka **SUBIL**)  and his associates do not appear to be real and are not listed on Safeway's website. A web search for those phone numbers produced no results associated with Safeway. Safeway's website lists their corporate phone number as 877-723-3929.

16.     The e-mail addresses are also in the incorrect format for Safeway or Albertson's. Deputy Klassen and I have communicated with several actual employees from both companies and their e-mails are formatted "firstname.lastname@company.com," unlike the emails sent from Delgado (aka **SUBIL**) and his associates.

17.     The Director of Seafood from Albertson's informed Gorelik the purchase orders were not valid or created with the software that Safeway or Albertson's uses.

**C.     Fake Purchase Orders Created by Odoo**

18.     On February 10, 2023, Deputy Klassen received a response from Odoo's Vice President of Sales and Customer Account Management, Brett Hydeman, in response

---

[2] https://securitytrails.com/list/apex_domain/safewaycorporate.com (last visited February 12, 2023)

Complaint- 6
*United States v. David Subil*

to an inquiry regarding the account used by Delgado (aka **SUBIL**) to send the purchase orders to Arctic Seafoods.  Mr. Hydeman stated that a "free trial" account was created on December 29, 2022, which is the day after communication began between "Safeway Corporate" and Arctic Seafoods. The last time Delgado (aka **SUBIL)** logged into his account was February 1, 2023, which corresponds to the date that the last purchase order was sent to Arctic Seafoods.  The email address used to create the Odoo account was chrisdelgado@safewaycorporate.com and the name provided was Christopher Delgado (aka **SUBIL**). Odoo was able to provide the last internet protocol (IP) address used.  An open-source search of this IP address reveals that it originates in Council Bluffs, Iowa and belongs to Google LLC.  Mr. Hydeman was unsure if that IP address was related to their servers, or the IP address used by Delgado (aka **SUBIL**).  Based on my training and experience, it is my belief that due to the sophistication of this scheme, it is likely that Delgado (aka **SUBIL)** would use a virtual private network (VPN)[3] to disguise his location and identity.

### D.    First and Second Pick-up from North Star Cold Storage Documents

19.     On January 23, 2023, North Star Cold Storage provided Deputy Klassen with bills of lading from the transactions involving Arctic Seafoods for January 18, 2023, and January 20, 2023.  The bill of lading from January 18, 2023, listed 300 cases of 6/9 count red king crab and 300 cases of 4/7 count king crab. The second bill of lading was dated January 20, 2023, and listed 360 cases of king crab legs and claws, 40 cases of Opilio snow crab and 240 cases of 6/9 count red king crab legs and claws.

20.     North Star Cold Storage also provided Deputy Klassen with the trucker sign-in log from both days. The log from January 18, 2023, listed the driver's name as "Juan Sanchez" and the trucking company as "Jorge Trucking." According to the log, the truck arrived at about 7:08 a.m. and left at about 8:42 a.m. The log from January 20,

---

[3] According to Forbes, VPN software protects your information by masking your device's IP address. The software encrypts your data and routes it through secure networks to servers in faraway states or other countries. A VPN hides your online identity, allowing you to browse the internet anonymously. (https://www.forbes.com/advisor/business/software/why-use-a-vpn/)

Complaint- 7
*United States v. David Subil*

1  2023, also listed Juan Sanchez from Jorge Trucking. The truck arrived at about 7:00 a.m.

2  and left at approximately 9:00 a.m.

3       21.     On January 23, 2023, Deputy Klassen reviewed footage from the North

4  Star Cold Storage facility from January 18, 2023, and January 20, 2023.[4]  Video from

5  January 18, 2023, showed a white truck with two axles and a refrigeration unit mounted

6  above the cab arriving to pick up the merchandise. According to Deputy Klassen's review

7  of the footage, the truck appeared to be at least 26 feet long, had a "Ryder" logo on the

8  side, and a reflective stripe running the entire length of the box.



23       22.     On February 8, 2023, I sent a subpoena to Ryder for information regarding

24  rental information for the trucks used on January 18, 2023, and January 20, 2023, to

25  transport the stolen goods. While they have not responded in writing to this request, on

28  [4] Based on Deputy Klassen's review of the surveillance footage and speaking with employees at the storage facility,
it is apparent that the time stamp from the video is not accurate.

Complaint- 8
*United States v. David Subil*

February 7, 2023, I spoke with Olga Alvarez, who is a Legal Project Manager for Ryder System, Inc. At that time, she verbally told me that the truck had been rented by an individual named David **SUBIL**.

23.     The videos showed several white cases, labeled on the top "Perishable Keep Frozen" securely sealed. These white cases were moved from the North Star Cold Storage facility into the truck on January 18, 2023, and January 20, 2023.

### E.     Third Pick-Up from North Star Cold Storage

24.     On January 23, 2023, Gorelik advised Deputy Klassen that DELGADO had contacted him from the same cell phone number, (208) 509-8598, and was attempting to purchase a third truckload of crab.  Gorelik advised he knew it was that number based on the number showing up on the screen when Delgado (aka **SUBIL**) called. On January 24, 2023, Gorelik sent Deputy Klassen the third purchase order for 6,250 pounds of 4/7 legs and claws and 6,250 pounds of 6/9 king crab, totaling $450,000.00. This purchase order was sent to Gorelik from Delgado (aka **SUBIL**) at notifications@safeway2.odoo.com, but listed the chrisdelgado@safewaycorporate.com email account, as well as the www.safewaycorporate.com web domain at the bottom of the email.  According to Gorelik, the purchase order had the incorrect weight, and another purchase order was sent to Gorelik approximately five minutes later with the correct weight (totaling 12,000 pounds instead of 12,500 due to the size of the pallets) and a total purchase order amount of $432,000.00. This purchase order was sent from and contained the same information as the incorrect purchase order described above. Gorelik worked with North Star Cold Storage to put product of lesser value in boxes labeled as the product ordered. Gorelik then advised Delgado (aka **SUBIL**) the product was released. Soon thereafter, North Star Cold Storage received a phone call from Delgado (aka **SUBIL**) to schedule the pickup, which was scheduled for 8:00 a.m. on January 25, 2023.  Deputy Klassen arranged for the use of unmarked vehicles to follow the truck from the North Star Cold Storage on January 25, 2023, after the product was loaded into the truck.

Complaint- 9
*United States v. David Subil*

25.     On the morning of January 25, 2023, Deputy Klassen and members of the Violent Offender Task Force, operating in unmarked vehicles, set up around the North Star Cold Storage warehouse.  Deputy Klassen contacted an employee at the facility, identified as A.L., and he advised Deputy Klassen he would handle the transaction like any other by bringing the driver the sign-in sheet and then loading the truck.

26.     At approximately 7:00 a.m., Deputy Klassen observed a white tractor trailer bearing Florida license plate number JD29UD and registered to Juan Manuel SANCHEZ-Abreu, parked in the loading dock of North Star Cold Storage.  At approximately 7:40 a.m., Deputy Klassen observed a male wearing a black hooded jacket exit the white tractor trailer and walk back to open the doors on the back of the trailer.  Deputy Klassen observed the unknown subject and noted he was close in stature and appeared to look like the driver he had previously seen in surveillance footage from the pickup on January 20, 2023.

27.     A.L. texted Deputy Klassen an image of the trucker sign-in log.  Deputy Klassen observed that the driver's name and signature box were filled out with scribbles. The signature scribble bore a close resemblance to the signature from the prior two events. The trucking company name was listed as "Jorge Trucking." The cell phone number was clearly written as "360-798-4436." A.L. also texted Deputy Klassen a photo of the license plate as the tractor trailer departed the facility. The trailer plate was a Florida plate, "QA84KI," however the "4" was black while the other letters was blue. The "4" appeared to be a house number affixed to the plate. Deputy Klassen noted the Department of Transportation (DOT) number, "3684599," and company name, "DBH Transport LLC," on the side of the truck.

Complaint- 10
*United States v. David Subil*

28.     Deputy Klassen and the unmarked units followed the tractor trailer as it traveled southbound on Pioneer Highway, eastbound on State Route 532, then southbound on Interstate 5. It exited on State Route 530 and initially turned into a gas station on the west side of Interstate 5, before crossing over Interstate 5 and going to the Pilot truck stop, located at 2430 State Route 532 in Arlington, WA, on the east side of Interstate 5. A passenger entered the cab, and the vehicle was refueled. Around 9:00 a.m., the truck exited the fuel stop and resumed driving southbound on Interstate 5.  Deputy Klassen noted the "4" on the license plate had fallen off, and the license plate now read QA81KI.

29.     Deputy Klassen contacted Trooper Eberle with Washington State Patrol's (WSP) Commercial Vehicle Enforcement Division. Trooper Eberle advised Deputy Klassen that he looked up the truck's DOT number and it was not valid. Trooper Eberle advised that the State Patrol could open the weigh station south of the City of Everett, Washington, and perform a commercial vehicle inspection. The tractor trailer entered the weigh station and Trooper Eberle and Trooper Lemmon performed an inspection.

30.     The driver was identified by Florida Driver's License as A.C.C. and the passenger was identified by Florida Driver's License as J. S-A.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

31.     WSP Troopers were advised by the occupants they were going to Portland to deliver the load to Albertson's. Trooper Eberle texted Deputy Klassen an image of the bill of lading given to him by SANCHEZ.  It should be noted the bill of lading that SANCHEZ presented looked nothing like the two previous bills of lading that Deputy Klassen reviewed from North Star Cold Storage. The date on the top of the bill of lading SANCHEZ presented was January 18, 2023[5], the trucking company was listed as Jorge Trucking, and the destination was listed as "Albertson's/Safeway at 17505 NE San Rafael, Warehouse 97230." The shipper was listed as Arctic Seafood with the street filled in as North Star Cold Storage in Stanwood, WA. The items loaded in the trailer were described as 12 units of frozen crab, weighing 1250. Handwritten diagonally across the document is "Call Chris" with phone number, (208) 509-8598 written directly underneath, which is the same number that Delgado (aka **SUBIL**) provided to both North Star Cold Storage and Arctic Seafoods. The seal number "0609777" was handwritten in different handwriting near the bottom of the document.

---

[5] The date of this trip was January 25, 2023.  See image of fraudulent bill of lading presented to Trooper Eberle below this paragraph.

Complaint- 12
*United States v. David Subil*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32.     Deputy KLASSEN requested the current bill of lading from North Star Cold Storage, which had just been provided to the driver of the truck earlier in the morning. When Deputy Klassen received the image of the document, he noted it matched the other two bills of lading in format. The authentic bill of lading listed 12,000 pounds of product, almost ten times as much listed on the bill of lading presented to WSP Troopers.

Complaint- 13
*United States v. David Subil*

STRAIGHT BILL OF LADING-SHORT FORM-ORIGINAL-NOT NEGOTIABLE

33.     Based on this information, I believe the bill of lading SANCHEZ presented to WSP Troopers was forged and that SANCHEZ knowingly presented the forged document as they had been given the legitimate bill of lading before leaving North Star Cold Storage. Based on the photo of J.S.A on his Florida driver's license, Deputy Klassen informed me that SANCHEZ closely resembles the driver who also picked up the product from North Star Cold Storage on January 20, 2023.

34.     The tractor trailer left the weigh station at approximately 10:45 a.m. and continued southbound on Interstate 5.  A short time later, Deputy Klassen and other law enforcement officers initiated a vehicle stop of the tractor trailer near Tacoma, Washington.

Complaint- 14
*United States v. David Subil*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

35.     Deputy Klassen approached the driver's side and contacted SANCHEZ
Deputy Klassen instructed SANCHEZ to turn the vehicle off and step out, which he did.
Deputy Klassen frisked him for weapons and attempted to read SANCHEZ his Miranda
Warnings verbatim from the department issued card, but SANCHEZ stated he didn't
speak English and needed a translator. Due to the traffic, it was difficult to hear so
Deputy Klassen placed SANCHEZ in the back of a patrol vehicle.  Deputy Klassen called
the language line and, through an interpreter, read SANCHEZ's Miranda Warnings
verbatim from his department issued card. SANCHEZ stated he understood his rights and
that he did not wish to speak with Deputy Klassen. SANCHEZ was placed back into the
rear of the patrol vehicle.

36.     Deputy Klassen then spoke with the passenger, A.C., in another patrol
vehicle. Deputy Klassen was sitting in the driver's seat, A.C. was sitting in the passenger
seat, and a deputy with a bodycam was recording from the backseat. Deputy Klassen
called the language line for A.C., as well, and, through an interpreter read the Miranda
Warnings verbatim from his department issued card.  A.C. stated he understood his rights
and he was willing to speak with investigators without a lawyer present.

37.     A.C. stated he and SANCHEZ both live in Florida, that he was out of
money, and badly needed work. A.C. said he had worked for SANCHEZ before, and that
SANCHEZ set up the transaction. A.C. said he used SANCHEZ's name at the cold
storage facility because J.S.A was the owner of the trucking company. A.C. stated he and
SANCHEZ had come from Florida on Friday to do this job, but he wasn't sure about the
date.  A.C stated he was delivering the product to Portland and didn't know anything
about the paperwork SANCHEZ had given the trooper. A.C. showed Deputy Klassen a
WhatsApp thread that included SANCHEZ's name at the top. A.C. scrolled through it,
showing Deputy Klassen the length of their communication.  Deputy Klassen didn't see
any recent communication and didn't see if they had any communications regarding their
arrangement for this delivery, A.C. stated there was not.

Complaint- 15
*United States v. David Subil*

38.    A.C. and SANCHEZ consented to a search of the van. Deputy Klassen removed the seal from the back of the trailer, reading "0609777" as listed on the fraudulent bill of lading but was not the same as the one, "0008788," listed on the legitimate bill of lading.

39.    Deputy Klassen entered the back of the trailer and observed the pallets North Star Cold Storage loaded.  Deputy Klassen was unable to move the pallets due to weight and could only inspect the closest two. They bore pallet "license plates" identical to two of the boards photographed and sent to Deputy Klassen by A.L., bearing the lot number 42435-N and boards 4 and 6. The product label showed Arctic Seafood King Crab, packed by North Star.

40.    Deputy Klassen entered the cab of the vehicle, located, and seized multiple cell phones, a tablet, and GPS device, believing all could provide valuable evidence of this crime and that seizing them could preserve evidence while applying for a search warrant.  Deputy Klassen searched for both the real and fake bills of lading but could not find either. There were numerous other bills of lading and trucking documents in manila envelopes, but these documents were not associated to the documents related to this date, so Deputy Klassen did not seize them.

41.    Deputy Klassen compared his in-person contact with SANCHEZ, on this date, with the subject observed in the security footage from the theft that occurred on January 20, 2023.   Based on his comparison of the two individuals, Deputy Klassen believes that it was SANCHEZ on both occasions based upon observed physical characteristics – to include height, weight approximate age, dark-skin complexion, and a distinct bulbous nose.   Additionally, the individual on the surveillance footage wore a hooded dark-colored jacket with a tan-colored pocket on the chest, right shoulder, and stomach area.   During the in-person encounter with SANCHEZ, Deputy Klassen observed that SANCHEZ was wearing a dark-colored jacket with the hood pulled up and tan-colored pockets in the same locations as on the jacket as previously observed on the surveillance footage.

Complaint- 16
*United States v. David Subil*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

42.     Based on his investigation, Deputy Klassen developed probable cause that SANCHEZ committed the crime of forgery and knowingly possessed a fraudulent bill of lading, which he used to avoid detection while transporting a load of fraudulently obtained product.

43.     Deputy Klassen advised SANCHEZ he was under arrest and placed him in handcuffs.  SANCHEZ informed Deputy Klassen that he was willing to release the truck to CUELLAR.  Deputy Klassen advised A.C. very clearly the product in the back of the trailer was not actually crab and was unsellable.  SANCHEZ was transported and booked into the Snohomish County Jail.  A few hours later SANCHEZ was bailed out of the Snohomish County Jail, and it is unknown where SANCHEZ. traveled to after he was released from police custody.

44.     On January 30, 2023, the Stanwood Police Department received a police report from the Sioux City, Iowa Police Department regarding a stolen tractor trailer reported on September 6, 2022.  On that date, SANCHEZ reported that his tractor trailer had been stolen from the side of Interstate 29.  This tractor trailer is the same vehicle, as identified by Florida license plate, that arrived at North Star Cold Storage on January 25, 2023, to pick up the third shipment. In the police report, SANCHEZ claimed he had a flat tire, walked to the nearest truck stop to get help, and when he returned found that his truck and trailer had been stolen. SANCHEZ informed police he had the keys and had locked the vehicle, so he had no idea how the thief was able to take the truck. According to the report, SANCHEZ owned a business called Chris Trucking Road Services.  It should be noted at the time of this theft SANCHEZ was hauling a load of Arctic Seafoods crab from Chesapeake, Virginia, to Seattle, Washington.  Gorelik informed me that Arctic Seafoods was just moving product from one cold storage facility to another.

45.     The Sioux City detective that investigated this crime noted that SANCHEZ stated he had a cell phone at the time of the vehicle breakdown but decided to walk a total of 45 minutes to get help instead of summoning help by using his cellular phone. After an initial conversation, the detective attempted to reach SANCHEZ and the number that

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

initially worked for SANCHEZ was no longer in service.  The detective also learned that the companies involved in this also were unable to reach SANCHEZ ever again. The detective also noted that route of travel did not make sense for a westbound trip from Virginia to Washington.  At the time of the theft, SANCHEZ was traveling southbound through Sioux City, Iowa.

46.     The detective concluded, through many interviews of people involved, that SANCHEZ was likely involved in the disappearance of his tractor trailer**.** At this time, throughout various locations in the Midwest, there were a significant number of vehicle thefts mostly involving tractor trailers full of meat. Due to the lack of evidence and an inability to reach SANCHEZ again, the Sioux City Police Department closed their case. Based on my discussions with other law enforcement officers involved in this case, as well as the evidence reviewed, it is my belief that SANCHEZ was probably involved in the theft of the merchandise inside his truck and likely sold the product for a considerable profit. It seems to be no coincidence that SANCHEZ and/or a coconspirator approached the same company, Arctic Seafoods, using a different name (Christopher DELGADO aka **SUBIL**), with the aforementioned scheme several months after being involved in the theft of their product.

F.     **Fourth Pickup from North Star Cold Storage**

47.     On January 27, 2023, Detective Steven Martin with the Stanwood Police Department informed me that Delgado (aka **SUBIL)** contacted Gorelik once again to facilitate another transaction between the business attempting to impersonate Safeway and Arctic Seafoods. Since the communication is still occurring after the last shipment, it is my belief these shipments may be stored in a warehouse without being opened right away.

48.     On January 30, 2023, Delgado (aka **SUBIL**) once again contacted Gorelik via cell phone to set up the next purchase.  At the behest of law enforcement, to procure warrants, Gorelik informed Delgado (aka **SUBIL**) there was a snag in production, and he would need to push the next shipment to Thursday.  Delgado (aka **SUBIL**) informed Gorelik he would call back on Wednesday to finalize the purchase to pick up the

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

merchandise on Thursday, February 2, 2023.  A few minutes later, Delgado (aka **SUBIL**) called Gorelik and asked him to send the invoice for the previous shipment on January 25, 2023.  Due to this ongoing investigation, law enforcement agents advised Gorelik to send the invoice to Delgado (aka **SUBIL**). Arctic Seafoods has not received payment for any of the previous three shipments.

49.    On February 1, 2023, Delgado (aka **SUBIL**) sent a purchase order to Arctic Seafoods in the amount of $420,000 for a fourth shipment. As described earlier in this affidavit, the purchase order emails are sent from Delgado (aka **SUBIL**) at notifications@safeway2.odoo.com, but list the chrisdelgado@safewaycorporate.com email account, as well as the www.safewaycorporate.com web domain at the bottom of the email. A copy of the purchase order that is attached to the email is shown below:



50.    The information contained in the above purchase order is not associated to the legitimate Safeway company. Based on the open-source search of the associated

Complaint- 19
*United States v. David Subil*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

address, it returns to the Albertson's corporate office headquarters, which is Safeway's parent company. The phone number does not come back associated with any Albertson's entity. For reference, Detective Martin received a copy of a legitimate Safeway purchase order from Scott Heggan, the Meat, Seafood, and Deli Procurement Manager from the Seattle Division of Albertsons Companies, which is shown below.



51.     On February 2, 2023, at approximately 4:08 p.m. Linda Boggs from North Star Cold Storage informed me they had just received a call from Delgado (aka **SUBIL**) to schedule a pickup appointment for the following day, February 3, 2023, at 1:00pm. As shown on their caller identification, Delgado (aka **SUBIL**) called from the same number he had previously communicated with both Arctic Seafoods and North Star Cold Storage.

52.     On February 2, 2023, at 4:21 p.m., Jennifer Zavala (aka **SUBIL**) (jenniferzavala@safewaycorporate.com) sent an email to Arctic Seafoods advising, "We have you scheduled for payment invoice #230120-1 on February 21, 2023." Previously, on January 23, 2023, Zavala (aka **SUBIL**) sent an email to Arctic Seafoods stating the

Complaint- 20
*United States v. David Subil*

first invoice (invoice #230118-2) will be paid on February 17, 2023. Based on the evidence discovered during this investigation, law enforcement officers believe all of the names, phone numbers, and email addresses are fictitious, and no payments will be made. It should be noted that no payment was received by Arctic Seafoods on February 17, 2023.

53.     On February 3, 2023, Delgado (aka **SUBIL**) called North Star Cold Storage, via his known phone number, (208) 509-8598, to cancel the scheduled pickup, stating there were truck problems.

54.     On February 3, 2023, I sent a subpoena to T-Mobile for subscriber information and phone tolls related to Delgado's (aka **SUBIL**) number, (208) 509-8598. T-Mobile was able to send the phone tolls; however, they informed me that the service is with Tracfone Wireless.  The T-Mobile representative informed me that Tracfone uses T-Mobile towers, so they were able to provide call data, but Tracfone holds the subscriber data.  On February 6, 2023, I sent a subpoena to Tracfone Wireless for subscriber information regarding this phone number.  I have attempted to contact Tracfone on numerous occasions since and they indicated that it was in process and were not able to give me any information over the phone.

55.     On February 7, 2023, the owner of Arctic Seafoods, Alex Gorelik, was contacted by Delgado (aka **SUBIL**) via email from chrisdelgado@safewaycorporate.com. Delgado (aka **SUBIL**) stated, "Hello. I'm just checking in to see how the production looks this week. Give me a heads up if you can." Gorelik responded he would have a better idea the following month and Delgado (aka **SUBIL**) responded, "Oh, ok. What type of inventory do you have available at the moment?" Based on the information available during this investigation, it is my belief that Delgado (aka **SUBIL**) is attempting to get more merchandise from Arctic Seafoods, while continuing to misrepresent himself as a representative of Safeway/Albertsons. I further believe he intends on not paying for the merchandise.

Complaint- 21
*United States v. David Subil*

56.     On February 7, 2023, at approximately 4:15 p.m. North Star Cold Storage informed me that Delgado (aka **SUBIL**), had called them and scheduled a pickup of the last order. The purchase order related to the shipment had been previously sent on February 1, 2023, and is found on page 19 of this affidavit. The pickup was scheduled to occur on February 8, 2023, at approximately 11:00 a.m.

### G.     Stolen Property from First and Second Pick-up Found in Florida

57.     On February 1, 2023, at approximately 8:52 a.m., Gorelik contacted me by telephone and stated that at approximately 7:30 a.m., one of Gorelik's customers, M.G., who is based out of Florida informed him he had received an offer by both text message and email from Bob INTERIAN of Jomara Seafood, based out of Hialeah, Florida, to buy crab.  M.G. informed Gorelik that based on the description of the seafood and the pictures that were sent to him by INTERIAN, it appeared to be Arctic Seafood's crab.  M.G. noted the prices that INTERIAN offered were below market value.

58.     Gorelik immediately suspected it was the crab stolen from Arctic Seafood by Delgado (aka **SUBIL**) and others, who previously represented themselves as Safeway corporation. M.G. forwarded Gorelik pictures INTERIAN had sent him, including pictures of the box and a label.  The label showed the lot number (Lot #: 42306-N) that was listed on both the purchase order sent from Delgado (aka **SUBIL**) to Arctic Seafoods and the invoice that Arctic Seafoods sent Delgado (aka **SUBIL**) on January 18, 2023. This lot number was included in the first shipment that was taken by deception on January 18, 2023, from the North Star Cold Storage Facility in Stanwood, WA.  Gorelik informed me the description of many of the other products being sold by INTERIAN match the products that were also picked up from the Stanwood facility on January 18, 2023, and January 20, 2023.  According to M.G., the product is being held at Neptune Cold Storage, located at 7337 NW 37th Avenue in Miami, Florida.

59.     On February 2, 2023, I contacted the owner of INTERIAN to inform him the products he was attempting to sell were stolen. INTERIAN stated he was unaware the products had been stolen and provided me with one of the invoices from Global Supply P

and P Inc., the company he purchased the stolen goods from. He further stated he
purchased the stolen goods from an individual named **David**.



60.     INTERIAN stated he was given a business card by "**David**." This card had
two phone numbers, 833-231-1955 and 786-403-3168.



Complaint- 23
*United States v. David Subil*

61.     On February 3, 2023, INTERIAN provided me with the receipt of wire transfer that Jomara Seafoods made to **Global Supply P & P Inc.** earlier that day. The wire transfer was made to the TD Bank account listed on the invoice above, ending in -5278, in the amount of $144,750.00.  According to INTERIAN, Jomara Seafoods made two different orders of crab from **Global Supply P & P Inc.** and made one wire transfer totaling $144,750.00. INTERIAN stated he paid $25 per pound for 6/9 and 4/7 king crab and $23 per pound for the 9/12 king crab. INTERIAN stated he planned to sell the product for approximately $30 per pound.

62.     **Global Supply P & P Inc,** is an active Florida Company. The company's registered agent is David **SUBIL**, and the registered address of the company is 6415 SW 42 Street Miami Florida, 33155. The Company was incorporated on September 15, 2020. This company has a website, https://www.globalsupplysystemsinc.com. While the number provided to contact the company on the website is 833-231-1955, INTERIAN informed me that he and **David** communicate using the other number on the business card, (786) 403-3168**.**  INTERIAN sent me a contact card to my cell phone, which lists the contact's name as David Global Food and that number as its associated phone number.  INTERIAN said that he has spoken to **David** via that phone number on several occasions, most recently on February 16, 2023.

63.     On February 16, 2023, a subpoena was sent to T-Mobile regarding the subscriber information for the phone number, (786) 403-3168.  T-Mobile responded that the subscriber was David **SUBIL** with an associated address of 6801 SW 83rd Place in Miami, FL. According to T-Mobile, **SUBIL** has been the subscriber of this phone number since August 9, 2021.

64.     **SUBIL** is the registered agent of a second company, SURF & TURF 2 YOU CORP, incorporated on May 25, 2022. The registered address is 6415 SW 42 Street Miami Florida, 33155. This company has a website, https://surfandturftoyou.com. The number provided to contact the company on its website, 833-231-1955, is the same as one of the numbers on the card given to INTERIAN by David.

Complaint- 24
*United States v. David Subil*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

65.     Based on a search of the Florida Department of Motor Vehicles, SUBIL has an issued driver license (S-140-160-71-148-0) with two addresses listed.  One being the registered address of **Global Supply P & P Inc** at 6415 SW 42nd Street in Miami, FL and the other being the address listed on the invoice above for wire transfers to Global Supply P & P Inc. at 6801 SW 83rd Place in Miami, FL.  The address found on the top of the invoice for **Global Supply P & P Inc.** is 6800 Bird Road, PMB 462 in Miami, Florida. An open-source check of this address reveals that it is a UPS store in Mami, Florida.

66.     David **SUBIL** has a long criminal history, including, but not limited to, Grand Theft of the 2nd Degree, Grand Theft 3rd Degree and Fraud-Swindle.  An online search reveals that in two prior instances, he has purchased seafood and meat with counterfeit checks.

67.     I obtained a recent mugshot of David **SUBIL**. He was arrested by the South Miami Police Department in October 2022 for DUI and Damage to Property or Person.



68.     On Tuesday, February 7, 2023, INTERIAN emailed still photographs from the surveillance cameras at Jomara Seafood in Miami, Florida. According to INTERIAN, the photographs depict the individual that sold him the crab and who he referred to as "**DAVID**." Based on the investigation, I believe the man in the photographs is David **SUBIL**.  Based on my experience and my knowledge of this investigation, I believe that

Complaint- 25
*United States v. David Subil*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**SUBIL** is representing himself as DELGADO and using both phone numbers, (208) 509-8598 and (786) 403-3168.



### H.    Surveillance and GPS Tracking of Fourth Shipment

69.    On February 8, 2023, at approximately 9:30 a.m., a dispatcher from NW Freight contacted North Star Cold Storage to confirm the pickup of the shipment. At approximately 11:30 a.m., a semi-truck with a black cab, bearing Washington license plate 94919RP, and white trailer, bearing Washington license plate 18986AG, approached the loading docks of North Star Cold Storage.  I was able to see the cab had "NW Freight" on both sides of the truck's doors. A North Star employee approached the truck and was able to confirm this vehicle was, in fact, there to pick up the target shipment. The target shipment included a box with a court authorized GPS tracking device.  On February 1, 2023, U.S. Magistrate Judge Mary Alice Theiler issued a warrant authorizing the installation of a GPS tracking device in the target shipment. No. MJ23-049-1 (W.D. Wash. February 1, 2023).  After the warrant was issued, on February 1, 2023, at approximately 1:50 p.m., I installed the tracking device in one of the boxes and put the box in the middle of pallet 3.

70.    On February 8, 2023, at approximately 12:20 p.m., after the pallets were loaded onto the truck, it left the cold storage facility and began traveling eastbound on

SR-532 toward Interstate 5. While traveling toward Interstate 5, I coordinated with WSP's Commercial Vehicle Enforcement Division to inspect the truck and its occupants. Upon entering the ramp to merge onto Interstate 5 southbound, WSP Trooper Travis Snider initiated a vehicle stop on the truck.  Trooper Snider informed me the driver of the truck was Oleksandr AVRAMYSHYN and provided a photograph of his Oregon driver's license. Trooper Snider asked the driver if there was anyone else in the vehicle and initially AVRAMYSHYN denied until eventually Trooper Snider found out that an additional individual was in the sleeper area of the cab, who did not have any identification except a document on his phone with a picture; however, all of the writing was in a foreign language and the subject did not speak any English.  The driver of the truck presented Trooper Snider with the bill of lading, registration, logbook, and information regarding their trip.  AVRAMYSHYN stated that they were traveling to Portland and provided an address of 901 NW Eastwind Drive. Trooper Snider took photographs of the documentation and provided them to me via text message and/or email.  At approximately 1:15 p.m., Trooper Snider released the vehicle, and it continued southbound on Interstate 5.

71.    Based on a review of the GPS tracking device, at approximately 5:00 p.m., the truck arrived at the Northwest Freight warehouse in Troutdale, Oregon, where it remained until the next day, February 9, 2023, at approximately 12:30 p.m., at which time the shipment moved approximately five miles to another warehouse, located at 17600 Northeast San Rafael Street in Portland, Oregon.

72.    On Friday, February 17, 2023, the shipment moved to the area of Catalina Cold Transfer, located at 2927 NW 74th Avenue in Miami, FL.

73.    On Saturday, February 18, 2023, the shipment moved to the area of Florida's Best Services, located at 702 NW 6th Avenue in Fort Lauderdale, FL.  Based on a Google search of the business, it appears that the business provides construction services, as well as junk removal.  Based on this, I believe that **SUBIL** disposed of the shipment once he realized that it did not contain the crab that he was attempting to steal by fraud.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

74.    HSI Taskforce Officer Walter Duran took the above photo in Fort Lauderdale, Florida, on February 18, 2023, at 3:03 p.m. pacific coast time.  At this time, the tracker is still pinging in the location where the above boxes were dumped.

**I.    Additional Communication with Co-Conspirators**

75.    On February 15, 2023, Delgado (aka **SUBIL**) contacted Gorelik, using the same number he had used with Gorelik in the past, and informed him that they had opened the third shipment and determined that the product shipped was not king crab. As previously discussed with law enforcement, Gorelik blamed the cold storage facility and determined that they would look into what happened.

76.    On February 15, 2023, and February 16, 2023, Delgado (aka **SUBIL**), using the same phone number, contacted Gorelik and discussed the third shipment and how they would handle the situation. Gorelik informed Delgado (aka **SUBIL**) it would be a process and the product should not be sent back to the cold storage facility at this time, until a full investigation can take place. These two calls were recorded.

Complaint- 28
*United States v. David Subil*

77.     On February 16, 2023, INTERIAN informed me David had contacted him from (786) 403-3168, the number belonging to **SUBIL**, and wanted to sell him additional crab. INTERIAN told David he was no longer interested in the product. It is believed that David is still trying to sell the stolen merchandise acquired via the first two shipments of king crab from Arctic Seafoods.

78.     On February 17, 2003, Delgado (aka **SUBIL**), once again, contacted Gorelik and informed him that he had opened the fourth shipment and realized that the product in the boxes was not crab. Again, at the behest of law enforcement, Gorelik explained that he did not know what happened and that they would attempt to determine what happened with the shipment.  This phone call was recorded.

**J.     Flight Booked to Colombia**

79.     On Saturday, February 18, 2023, I was notified that **SUBIL** had booked a one-way ticket from Miami International Airport (MIA) to Medellin, Colombia.  The flight booking notification was based on an exact match of name and date of birth.  The American Airlines flight (Flight # 1127) is scheduled to depart MIA at approximately 10:32 a.m. eastern on Sunday, February 19, 2023.  According to Customs and Border Protection (CBP), the flight was booked on the morning of February 18, 2023, at approximately 8:48 a.m.  Based on Passenger Name Record (PNR) data, which is collected at the time of booking, **SUBIL** would be traveling alone.  According to CBP records, **SUBIL** has no international travel in the last five years.  **SUBIL** has no known connection to Columbia. Based on my experience and the recent activity in this case, I believe this last-minute travel was booked in order to flee the country from potential prosecution.

80.     This warrant is being submitted via reliable electronic means. Fed. R. Crim. P. 4.1 & 41(d)(3).

Based on the above facts, I respectfully submit there is probable cause to believe that David **SUBIL** did knowingly and intentionally (1) unlawfully transport or cause to be transported in interstate or foreign commerce; (2) goods, wares, merchandise, securities, or money having a value of $5,000 or more which are stolen, converted, or

Complaint- 29
*United States v. David Subil*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | taken by fraud; and (3) knowing the same to be stolen, converted or taken by fraud, in
2 | violation of Title 18, United States Code, Section 2314.
3 |
4 | DAVID J            Digitally signed by
5 | SPITZER            DAVID J SPITZER
   |                    Date: 2023.02.18
   |                    17:25:02 -08'00'
6 |                    _____
7 |                    DAVID J. SPITZER, Complainant
   |                    Special Agent, HSI
8 |
9 |
10 |       Based on the Complaint and Affidavit sworn to before me by telephone, the Court
11 | hereby finds that there is probable cause to believe the Defendant committed the offense
12 | set forth in the Complaint.
13 |
14 |       Dated this 18th day of February, 2023.
15 |
16 |
17 |                    DW Christel
   |                    _____
18 |                    David W. Christel
   |                    United States Magistrate Judge
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

Complaint- 30
*United States v. David Subil*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970